(77 South. 692)

CLARK v. INTERNATIONAL HARVESTER CO. OF AMERICA.   (4 Div. 746.)

(Supreme Court of Alabama.   Nov. 29, 1917. Rehearing Denied Jan. 24, 1918.)

1. GUARANTY ☞85(1) — COMPLAINT — SUFFI-CIENCY.

A seller's complaint on a guaranty of payment indorsed on purchase-price notes, which set out the guaranty verbatim and alleged that payment was not made at maturity, etc., held sufficient as against a demurrer.

2. EVIDENCE ☞119(3)—RES GESTÆ—ADMIS-SIBILITY OF EVIDENCE.

In a seller's action on defendant dealer's guaranty of payment indorsed on purchase-price notes, a contract between the parties, under which the seller delivered the property covered by the notes, held admissible as part of the transaction.

3. FRAUDS, STATUTE OF ☞108(3)—GUARANTY OF PAYMENT—CONSIDERATION.

A guaranty of payment on the back of a note containing the expression "For value received" sufficiently expresses the consideration.

4. SALES ☞8—CONSTRUCTION OF CONTRACT.

A contract between a manufacturer and dealer held to show that the manufacturer sold to the dealer, and not to the ultimate customer, although the dealer could apply the customer's notes on the purchase price under certain conditions.

Appeal from Circuit Court, Covington County; A. B. Foster, Judge.

Action by the International Harvester Company of America against J. T. Clark. Judgment for plaintiff, and defendant appeals.   Transferred from the Court of Appeals under section 6, Acts 1911, p. 449.   Affirmed.

One C. S. Walton executed several promissory notes to appellee given for the purchase of a kerosene engine, it being stated in the notes that they were given for that purpose, and that the title to the engine should re-

main in the International Harvester Company until the machine was paid for in full. These notes were executed by Walton on the 9th day of September, 1913. About two months after their execution the appellant, J. T. Clark, at the request of a representative of the International Harvester Company, signed an indorsement or guaranty of payment of the notes, said indorsement or guaranty being set out on the back of each of the notes. Plaintiff brought suit against the defendant on this guaranty. The contention of the defendant was that the guaranty was signed by him under the representation of the agent of appellee that it was merely an indorsement; that he did not read the guaranty, but was induced to sign it upon the statement of appellee's representative that it was merely an indorsement. His further contention is that his signing the guaranty was without consideration, and, being signed about two months after the original notes were executed, the agreement was void under the statute of frauds. Testimony of the appellant is to the effect that C. S. Walton purchased the kerosene engine referred to in the notes signed by him through one H. B. Gay, who represented appellee, and that the engine purchased by Walton was merely shipped with engines and machinery purchased by him in order to save freight, and that his signature to the guaranty was obtained by misrepresentation on the part of one Gay, who represented plaintiff.

It was further insisted that at the time of the purchase of the engine there was a contract of warranty made to Walton to the effect that the engine was in good condition and would work all right. As a part of the defense interposed it was set up that this warranty was broken, that the engine was defective and failed to do the work as guaranteed, and that by reason thereof it was worth greatly less than the purchase price. The contention on the part of appellee was that appellant became the purchaser under a contract which is set out on pages 34-40 of the record. In this agreement the defendant ordered plaintiff to ship at once by freight to the defendant at Red Level, Ala., the goods therein specified, and at prices therein named, which defendant agreed to pay for in cash on or before the dates therein specified, and, if not then paid by defendant, he agreed to pay interest thereon at the rate of 8 per cent. per annum. Defendant agreed further that, when called upon by plaintiff, he would execute and forward to plaintiff notes for the purchase price of the property, such notes to mature at the date therein agreed upon. The agreement further provides that the goods specified therein are warranted by plaintiff to be made of good material and to do good work when properly set up and adjusted, and that if any parts should prove defective, plaintiff should have the right to replace them, and no goods were

to be condemned on account of such defects if properly made good.

Defendant agrees to examine all goods on arrival and to notify plaintiff of any shortage or defective parts and to give reasonable time to replace them. The agreement provides further that the title to and the ownership of all goods shipped under this contract shall remain the property of the International Harvester Company, the plaintiff, and that in case of a sale of the goods shipped under said contract the proceeds thereof should be the property of plaintiff and subject to the order of plaintiff until full payment should be made by the purchaser to plaintiff for said goods. Five engines comprised the property described in the written order or agreement, one of them being the engine for which the notes sued on in this case were given. This engine is referred to in this agreement as follows: "1 Int. 50 H. P. as described in the attached order of C. S. Walton, $1,650.00." This agreement is signed by the defendant and plaintiff. Attached to this contract and bearing the same date, July 15, 1913, is a written agreement termed a sale contract and order for engine goods. It provides that the dealer may, at his option, turn over to International Harvester Company in settlement the notes of the party to whom the sale is made, provided these notes are indorsed by the dealer and acceptable to the International Harvester Company, and that they will be accepted to the extent of 80 per cent. of dealer's price of engines. This agreement recites that, in consideration of the attached order, International Harvester Company agrees not to enter into a contract for the sale of engines with any person within the limits of Red Level during the time of the contract. On the same day, July 15, 1913, C. S. Walton signed a written order for an engine. This order is addressed to defendant, and recites that Walton orders, subject to the conditions on the back thereof, one 50-horse power engine complete, including necessary fixtures, at the price of $1,650, shipment to be made at once. Walton agrees that he will receive same on arrival, and upon delivery will pay to the order of J. T. Clark $275 in cash, and executes notes payable as follows: $275 due December 1, 1913; $267 due June 1, 1914; $567 due December 1, 1914; $266 due June 1, 1915. He agrees, further, that the title to said property shall remain vested in said J. T. Clark and his assigns until the entire purchase price has been paid in money. On the back of this written order is a warranty, under which plaintiff warrants the engine to do good work, to be well made, of good material and durable, etc. It provides that, if upon one day's trial with proper care, the engine fails to work well, Walton shall immediately give written notice to the plaintiff at Chicago and to the dealer from whom the engine was received, and shall allow a

reasonable time for a competent man to be sent to put the engine in good order.

On September 9, 1913, C. S. Walton executed what is referred to in the bill of exceptions as an installation receipt. It is addressed to the plaintiff, and recites that plaintiff's expert has started and tested the engine which he purchased from J. T. Clark. He recites that the engine was placed as he requested; that it does good work and fulfills the warranty under which he bought it. On the same day, September 9, 1913, Walton executed the notes sued on in this case. On the back of these notes the guaranty of the defendant appears. This contract of guaranty recites that it is "for value received." The guaranty contract is not dated, and it does not appear from the record exactly when it was executed. The defendant testifies that his recollection is that it was somewhere about the 1st of November thereafter. The note due June 1, 1914, has credits on the back of $50 paid by Walton October 28, 1914, and $100 paid by Walton March 30, 1914, and $100 paid by defendant on September 16, 1915.

Plaintiff insisted there was no breach of warranty and no fraud. There was verdict for plaintiff, and defendant appeals.

W. L. Parks and Jones & Powell, all of Andalusia, for appellant. Powell, Albritton & Albritton, of Andalusia, for appellee.

GARDNER, J. Suit by appellee against appellant upon a guaranty of payment indorsed on the back of a certain bond or instrument under seal, executed by one C. S. Walton, payable to the plaintiff.

[1] The complaint, considered as amended pursuant to agreement of counsel on file, showed the amount of the contract sued on executed by said Walton, and set out verbatim, the guaranty of payment written on the back of the note or bond which was signed by the defendant, and it was further alleged that the said instrument was not paid at maturity. We think the complaint was sufficient as against any assignment of demurrer interposed thereto.

The defendant insisted that his signature to the guaranty of payment was obtained through misrepresentation or fraud. This issue was fairly submitted to the jury under appropriate instructions from the court, and no questions arise as to this particular defense.

It is further insisted by defendant, however, that the engine for the purchase price of which the instrument here involved was executed was not purchased by him, but by the said Walton direct, and merely shipped with the defendant's goods to save freight, and that his guaranty of payment was made some time after the execution of the notes by Walton, was without consideration, and void. The contract, however, the substance of which appears in the foregoing statement of the case, discloses that the defendant himself was the purchaser of this particular engine, and that under this contract he was authorized to take the note of the purchaser and guarantee the payment thereof to the plaintiff in part satisfaction for the purchase price.

The court below held that the written contract, the validity of which was in no manner attacked, or questioned, covered the respective rights of the parties, and that under the said contract the defendant was the purchaser of the engine. We can see no escape from this conclusion from the plain language of the contract itself. The court further charged the jury that if they believed that these notes were executed for the purpose of carrying into effect the purchase of this engine according to the terms of the contract, and was signed by the defendant as a part of that transaction, and in accordance with the clause therein provided, whereby he could indorse the notes of some of the purchasers, and the plaintiff would receive them, then, the contract on the part of defendant in signing the guaranty would be based upon a sufficient consideration.

[2, 3] The contract here mentioned was a part of the entire transaction, and clearly admissible, and we are of the opinion that exception to that portion of the oral charge just referred to is without merit. The guaranty of payment on the back of the note contained the expression "For value received," and we think this sufficient as to the expression of consideration. Flowers v. Steiner, 108 Ala. 442, 19 South. 321.

[4] The question of prime importance on this appeal relates to the action of the court in construing the written contract entered into as disclosing that the defendant himself purchased the engine from the plaintiff, and that Walton, who executed the note, ordered the engine from defendant at a stipulated price. We conclude that these contracts, the validity of which are not questioned, fully support the conclusion of the court below. The other questions presented, not herein discussed, we do not deem of sufficient importance to require separate treatment. Suffice it to say they have been carefully considered in consultation, and we find nothing in them calling for a reversal of the cause.

The judgment of the court below will be accordingly affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.